UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| EUGENE MCALLISTER, | ) |
| Plaintiff, | ) ) ) |
| vs. | ) No. 4:13-CV-2492 (CEJ) |
| ROBERT DEAN and EDDIE BOYD, | ) ) ) |
| Defendants. | ) |

**MEMORANDUM AND ORDER**

This matter is before the court on the separate motions of defendants Robert Dean and Eddie Boyd for summary judgment, pursuant to Fed.R.Civ.P. 56. Plaintiff, who proceeds *pro se*, has filed responses in opposition and the issues are fully briefed.

Plaintiff Eugene McAllister was a passenger in a vehicle involved in a high speed chase. He alleges that when the chase ended, defendant Eddie Boyd, a Ferguson City police officer, struck him several times. He also alleges that defendant Robert Dean, a St. Louis County K-9 officer, allowed his dog to bite him several times. He brings this action pursuant to 42 U.S.C. § 1983, claiming that defendants' actions violated his civil rights.

I. **Background**

In the afternoon of January 26, 2011, plaintiff, then 16 years old, was a passenger in a stolen Dodge Stratus driven by Brandon Foster; also in the car were Randy Thomas, Ellis King and Darrel Davis. Foster began speeding in an effort to catch up with another car that appeared to be trying to get away. Pl. Dep. at 96 [Doc. #55]. Defendant Boyd pulled in behind the Stratus and signaled to the driver

to pull over. Aff. Eddie Boyd ¶3 [Doc. #42-3]; Aff. Joseph Percich ¶4 [Doc.#47-29]. Rather than comply, Foster sped off, triggering a high-speed chase across multiple jurisdictions. Pl. Dep. at 99-101; 107-17; Percich Aff. ¶9. Police cars from the Missouri State Highway Patrol, St. Louis County, and six municipalities joined the pursuit, including St. Louis County police officer Joseph Percich and his partner Derek Jackson. Percich Aff. ¶10; Aff. Robert Dean ¶11 [Doc. #47-34]. In the opening minutes of the chase, Foster sped along surface streets, ignored stop signs and traffic signals, and at one point drove across a municipal park. Pl. Dep. 108-10.

Police dispatchers notified the pursuing officers that the Stratus had been reported stolen and that multiple shots had been fired from the car. Percich Aff. ¶¶7, 12, 17. Percich states that Foster intentionally struck police vehicles with the Stratus and injured an officer from the Dellwood Police Department. Id. ¶9; see also Dean Aff. ¶15 (Stratus rammed Ferguson police department vehicle). Plaintiff denies that the Stratus struck any police vehicles.

Despite law enforcement efforts to stop the Stratus, Foster managed to steer it onto Interstate 270, traveling in the wrong direction. Id. at 108-09, Percich Aff. ¶11. He swerved in and out of oncoming traffic at speeds in excess of 100 miles per hour. Pl. Dep. at 110. When officers deployed tire deflation devices ahead of the Stratus, Foster abruptly turned around and raced back up the highway. Id. at 112-13; Percich Aff. ¶¶15-16. He then exited onto Interstate 170, with Percich and Jackson's vehicle about twenty feet behind him on the ramp. According to Percich, plaintiff and Ellis King leaned out the rear windows of the Stratus armed with guns. Id. ¶¶19-20, 23. Plaintiff shot at the pursuing police car at least once. Id. ¶24.

When the 11-minute chase ended, a revolver and semi-automatic gun were found in the car. Id. ¶31.

Because of mechanical failure the Stratus eventually came to a halt on Interstate 70. Id. ¶29. Several officers rushed the car, Pl. Dep. at 117, and began instructing the occupants to put their hands up, exit the car, and get on the ground. Percich Aff. ¶33. Officer Percich states that no one complied, id., while plaintiff states that everyone in the car raised their hands to indicate surrender. Pl. Decl. ¶ 7 [Doc. #52]. A Ferguson officer moved forward to remove Foster from the driver's seat. Percich was close behind and had his gun trained on plaintiff. Percich Aff. ¶34. Percich looked into the car and saw a handgun between plaintiff's legs, within easy reach of his left hand. Percich Aff. ¶¶35-36. He yelled "gun, gun, gun" so that every police officer knew that plaintiff had a gun. Id. ¶37. Plaintiff denies that he ever touched the gun.

Defendant Dean and a police dog were positioned behind the Stratus. Pl. Dep. at 165. Plaintiff was aware of the dog's presence.[1] Am. Comp. at 3 [Doc. #15]. Dean deployed the dog to remove plaintiff from the car. Id. ¶29. Because the dog was unable to get a "full bite" on plaintiff's thigh, it "apprehended" his arm and pulled him out of the car. Id. The dog released plaintiff when directed to do so by Dean. Id. ¶30. Plaintiff states that after the dog released its grip on his arm, it snapped and bit his finger. Pl. Dep. at 54. The canine apprehension took approximately six seconds.[2] Id. ¶31.

---

[1] Plaintiff heard the dog barking before it was deployed. Pl. Dep. at 163. The dog apparently bit a police officer standing between Dean and the passenger door and plaintiff heard the officer shouting. Pl. Dep. at 49-50.
[2] Plaintiff contends that there is a factual dispute with respect to whether the apprehension lasted six seconds. The evidence he cites in support — photographs of his injuries — does

3

Plaintiff was taken to DePaul Hospital where his bite wounds were cleaned. Pl. Dep. at 59-60; 176. He was declared fit for confinement and released with a prescription for Ibuprofen. Id. at 175. He was then taken to the juvenile detention center. Id. About a week later, he had x-rays and learned that his little finger was broken. Id.

Plaintiff was convicted following a jury trial of two counts of assaulting a police officer for shooting at Officers Percich and Jackson, two counts of armed criminal action, and one count of unlawful use of a weapon for firing the gun from a motor vehicle. Pl. Dep. at 178-79; State v. McAllister, 399 S.W.3d 518 (Mo. Ct. App. 2013). He is presently serving a twenty-year term of imprisonment.

Additional facts will be provided as necessary to address plaintiff's claims.

**II.   Legal Standard**

Rule 56(a) of the Federal Rules of Civil Procedure provides that summary judgment shall be entered if the moving party shows "that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." In ruling on a motion for summary judgment the court is required to view the facts in the light most favorable to the non-moving party and must give that party the benefit of all reasonable inferences to be drawn from the underlying facts. AgriStor Leasing v. Farrow, 826 F.2d 732, 734 (8th Cir. 1987). The moving party bears the burden of showing both the absence of a genuine issue of material fact and its entitlement to judgment as a matter of law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986); Matsushita Electric Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986). Once the moving party has met its burden, the non-

---

not convey any information regarding how long it took for the dog to extract him from the car. Furthermore, to the extent that there is a genuine factual dispute, it is not material.

moving party may not rest on the allegations of his pleadings but must set forth specific facts, by affidavit or other evidence, showing that a genuine issue of material fact exists. United of Omaha Life Ins. Co. v. Honea, 458 F.3d 788, 791 (8th Cir. 2006) (quoting Fed.R.Civ.P. 56(e)). Rule 56 "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corporation v. Catrett, 477 U.S. 317, 322 (1986).

### III. Discussion

Plaintiff asserts that factual disputes preclude summary judgment on his excessive force claims. Most significantly, he asserts that he did not fire a gun at any time during the chase. However, he was convicted of two counts of felony assault of a law enforcement officer for shooting at Officers Percich and Jackson "on westbound 1-270 near the ramp to southbound Highway 170." Judgment, Verdict, Indictment [Doc. #47-12]. Section 1983 plaintiffs may be precluded from re-litigating in federal court issues decided against them in state criminal proceedings. Crumley v. City of St. Paul, Minn., 324 F.3d 1003, 1006 (8th Cir. 2003) (citing Allen v. McCurry, 449 U.S. 90, 103 (1980)). "[O]nce a court has decided an issue of fact or law necessary to its judgment, that decision may preclude re-litigation of the issue in a suit on a different cause of action involving a party to the first case." Id. (citation omitted; alteration in original). "This court gives a state court judgment the same preclusive effect it would be given under the law of the state in which it was rendered." Id. (citing 28 U.S.C. § 1738).

5

In Missouri, issue preclusion will apply when: (1) the issue decided in the prior proceeding was identical to the issue presented in the current action; (2) the prior judgment resulted in a judgment on the merits; (3) the party against whom issue preclusion is asserted was a party or in privity with the party in the prior proceeding; and (4) the party had a full and fair opportunity to litigate the issues in the prior proceeding. Woods v. Mehlville Chrysler-Plymouth, 198 S.W.3d 165, 168 (Mo. Ct. App. 2006) (citing Sexton v. Jenkins & Associates, Inc., 152 S.W.3d 270, 273 (Mo. 2004)). These requirements are satisfied here and thus plaintiff cannot create a factual dispute in this case by asserting that he did not commit the acts for which he was convicted. See Jones v. City of St. Louis, 92 F. Supp. 2d 949, 952 (E.D. Mo. 2000) (in addressing summary judgment motion in § 1983 case brought by plaintiffs convicted of assault of law enforcement officers, court may not revisit factual issue of whether shots were fired at police officers). Thus, it has been established that plaintiff shot at officers Percich and Jackson.

Plaintiff identifies a number of other "disputed" facts. [Doc. #52]. Some of his disputes are directed to the order in which events occurred—*e.g.*, when commands were given, when the dog was released into the car, and who was standing where at that time. There was undoubtedly a great deal of urgent activity directed to gaining control over the Stratus and the five occupants. Under these circumstances, it would be surprising if there were not different recollections of the events. Nevertheless, none of the disputes plaintiff relies on is material to the issues before the court. Other disputed facts will be addressed where relevant in the discussion below.

Plaintiff claims that defendants Dean and Boyd used excessive force in arresting him. "The right to be free from excessive force is a clearly established right under the Fourth Amendment's prohibition against unreasonable seizures of the person." Copeland v. Locke, 613 F.3d 875, 881 (8th Cir. 2010) (citation omitted). "Fourth Amendment jurisprudence has long recognized [however] that the right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it." Crumley v. City of St. Paul, Minn., 324 F.3d 1003, 1007 (8th Cir. 2003) (quoting Graham v. Connor, 490 U.S. 386, 396 (1989)) (alteration in original). Therefore, "[n]ot every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates the Fourth Amendment." Id. (internal quotation and citation omitted).

Whether an officer's use of force is "excessive" is a question of whether the force used was "objectively reasonable under the particular circumstances." Copeland, 613 F.3d at 881 (citation omitted). Determining the objective reasonableness of a particular seizure under the Fourth Amendment "requires a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." Graham, 490 U.S. at 396. In completing this balancing, courts "evaluate the totality of the circumstances, including the severity of the crime, the danger the suspect poses to the officer or others, and whether the suspect is actively resisting arrest or attempting to flee." Id. (citation omitted). The Supreme Court has recently identified the following additional considerations in determining the reasonableness of force used: "the relationship between the need for the use of force and the

7

amount of force used; the extent of the plaintiff's injury; any effort made by the officer to temper or to limit the amount of force; the severity of the security problem at issue; the threat reasonably perceived by the officer; and whether the plaintiff was actively resisting." Kingsley v. Hendrickson, 135 S. Ct. 2466, 2473 (2015) (addressing excessive force under Fourteenth Amendment).

Courts should not allow "the 20/20 vision of hindsight" to cloud "the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." Schoettle v. Jefferson Cnty., --- F. 3d ---, 2015 WL 3621446, at *3 (8th Cir. June 11, 2015) (quoting Graham, 490 U.S. at 396-97). "In other words, to comport with the Fourth Amendment, the force must have been objectively reasonable in light of the facts and circumstances confronting the officers at the time it was used." Id. Courts should not consider the officers' subjective motivations when determining whether their use of force was reasonable under the Fourth Amendment. Id.

### A. Defendant Boyd

Plaintiff asserts that he sat in the Stratus with his hands raised. Defendant Boyd opened the rear passenger door and commanded him to get out, but he could not comply because Boyd blocked the doorway. Pl. Dep. at 167. According to plaintiff, Boyd punched him repeatedly, even as plaintiff tried to surrender. Pl. Dep. at 51-52. Plaintiff testified that Boyd hit him about six times on the forehead, head, and below his left armpit. Id. Boyd did not hit him in the nose, mouth or eyes. Id. at 61-62. Plaintiff also claims that after the dog dragged him out of the car, Boyd and an unidentified officer hit him another eight times and engaged in a "tug of

8

war" with him, pulling him in one direction while the dog pulled him in another direction. Pl. Dep. at 47, 52-54. After the dog released plaintiff, Boyd hit him twice more in the back of the head. Id. at 55. He blacked out briefly from the blows. Id. at 56; 62; but see id. at 63-64 ("Q: You're not sure if you were unconscious, you just don't remember it; right? A: Right."). He had no cuts from the blows and could not say whether he had any bruises. Id. at 65; 61-62. He did not require any medical care for injuries related to Boyd's conduct. Plaintiff testified that Boyd drove him to the Ferguson police station after he received medical care.³ Id. at 98.

Boyd had the right to use *some degree* of physical coercion against plaintiff to effect an arrest. Henderson v. Munn, 439 F.3d 497, 502 (8th Cir. 2006) (emphasis in original). In determining whether the force he used was reasonable, the court considers the totality of the circumstances, including "the severity of the crime, the danger the suspect poses to the officer or others, and whether the suspect is actively resisting arrest or attempting to flee." Graham, 490 U.S. at 396. The circumstances here weigh in favor of Boyd: In the moments after the Stratus came to a halt, the officers faced a carful of suspects who had engaged in extremely dangerous behavior in order to evade arrest. Boyd confronted a suspect who had a firearm that he had already shown a willingness to use against police officers. Boyd also knew that another passenger had a weapon that he had fired at police officers. The five suspects and two handguns were in a confined space

---

³Boyd claims that plaintiff has him confused with another officer and denies that he had any physical contact with plaintiff at any time during this incident or that he transported plaintiff to the Ferguson police station. Boyd Interrogatory Resp. ¶4 [Doc. #42-2]; Eddie Boyd Aff. ¶4 [Doc. #42-3]. For the purposes of summary judgment, however, he argues that even if he used force against plaintiff as alleged, his conduct did not violate the Fourth Amendment because such force was objectively reasonable under the circumstances.

9

affording limited room for officers to maneuver. Officers needed to move quickly to separate the suspects from one another, the vehicle, and the weapons.

A *de minimis* use of force is insufficient to support a claim, and the court may consider the degree of injury sustained "insofar as it tends to show the amount and type of force used." Chambers v. Pennycook, 641 F.3d 898, 906 (8th Cir. 2011); *cf.* Kingsley v. Hendrickson, 135 S. Ct. 2466, 2473 (2015) (degree of injury is factor to be considered in excessive force claim brought under Fourteenth Amendment). The undisputed facts establish that plaintiff was treated for bite wounds and declared fit for confinement. Plaintiff did not sustain any cuts and cannot identify any bruises caused by Boyd. He was not diagnosed with concussion. A week after the incident, it was determined that he had a broken finger — an injury that he attributes to a dog bite, not to Boyd's conduct. Furthermore, plaintiff does not allege that he has any ongoing symptoms or medical conditions as a consequence of being struck by Boyd. Thus, any injuries that plaintiff sustained as a result of his encounter with Boyd were minor and support a conclusion that the force used was minor. Grider v. Bowling, 785 F.3d 1248, 1252 (8th Cir. 2015) (use of force not excessive where plaintiff alleged no injuries occurred from officer's actions); see also Wertish v. Krueger, 433 F.3d 1062, 1067 (8th Cir. 2006) (relatively minor scrapes and bruises and less-than-permanent aggravation of a prior shoulder condition were *de minimis* injuries that support the conclusion that officer did not use excessive force). Plaintiff argues that he has not been provided with the necessary medical records to establish that he sustained more serious injuries. However, he does not allege that he sustained serious or ongoing injury, and thus he cannot plausibly claim that

medical records would establish that he sustained an injury that would indicate a more than *de minimis* use of force.

Plaintiff argues that it was unreasonable for defendants to use any force because he had indicated his surrender by raising his hands. "It is well established that a police officer may not continue to use force against a suspect who is subdued and complying with the officer's orders." Johnson v. Scott, 576 F.3d 658, 660 (7th Cir. 2009) (citations omitted). "But that principle depends critically on the fact that the suspect is indeed subdued." Id. Here, defendants had no way of knowing how plaintiff was going to behave and they were not required to take his apparent surrender at face value, especially with a gun in easy reach. Id.

For the reasons set forth above, the court finds that Boyd's alleged conduct did not constitute excessive force in violation of the Fourth Amendment.

The court next considers Boyd's claim of qualified immunity. Qualified immunity shields a government official from liability and the burdens of litigation in a § 1983 action for damages unless the official's conduct violated a clearly established constitutional or statutory right of which a reasonable official would have known. Chambers v. Pennycook, 641 F.3d 898, 904 (8th Cir. 2011). For a right to be clearly established, "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." Id. at 908 (quoting Anderson v. Creighton, 483 U.S. 635, 640 (1987)). The courts must ask whether the law at the time of the events in question gave the officers "fair warning" that their conduct was unconstitutional. Id.

In Chambers, the Eighth Circuit wrote that "it is logically possible to prove an excessive use of force that caused only a minor injury," and that the degree of

injury sustained by a plaintiff "should not be dispositive" of whether the police used excessive force. Chambers, 641 F.3d at 906. Thus, in Chambers the court "recognized for the first time . . .that police conduct that causes only *de minimus* injury could constitute excessive force." Meehan v. Thompson, 763 F.3d 936, 946 (8th Cir. 2014). However, before the Chambers decision in June 2011, it was "an open question in this circuit whether an excessive force claim requires some minimum level of injury." Id. (citation omitted). On January 26, 2011, when this incident occurred, "a reasonable officer could have believed that as long as he did not cause more than *de minimis* injury to an arrestee, his actions would not run afoul of the Fourth Amendment." LaCross v. City of Duluth, 713 F.3d 1155, 1158 (8th Cir. 2013) (citation omitted). Although it is not possible to define what constitutes a *de minimis* injury with any precision, see Davis v. White, No. 14-1722, 2015 WL 4528367, at *2 (8th Cir. July 28, 2015) (listing cases), the court has not located any case in which possible bruising exceeded the level of a *de minimis* injury.

Given the state of the law at the time of the incident at issue here, it was not clearly established Boyd's alleged conduct was unconstitutional. Therefore, Boyd is entitled to qualified immunity.

    **B. Defendant Dean**

Plaintiff asserts that defendant Dean used excessive force when he deployed a police dog to extract him from the Stratus. Review of excessive force claims involving police dogs is governed by the general standard established in Graham v. Connor. Kuha v. City of Minnetonka, 365 F.3d 590, 598 (8th Cir. 2003) abrogated by Szabla v. City of Brooklyn Park, Minnesota, 486 F.3d 385 (8th Cir. 2007). Again,

the court considers the totality of the circumstances, including the severity of the crime, the danger the suspect poses to the officer or others, and whether the suspect is actively resisting arrest or attempting to flee. For all of the reasons stated above, these factors weigh heavily in favor of defendant Dean.

According to defendant Dean, once he heard Officer Percich's announcement that plaintiff had a weapon, he decided to extract plaintiff from the Stratus and get him away from the gun. He relied on the dog to remove plaintiff from the Stratus because he did not want to risk plaintiff shooting him or the other officers. Dean opened the rear door and ordered the dog to apprehend plaintiff. He states that as plaintiff was pulled from the car, he saw the gun on plaintiff's seat. He also states the dog released plaintiff when commanded to do so. Dean Aff. ¶¶27-30.

Plaintiff argues that there is a material factual dispute with respect to whether Percich announced that plaintiff had a gun. In light of the uncontestable evidence that plaintiff had fired a weapon a very few minutes earlier, Dean could reasonably assume that plaintiff still had possession of the gun and presented a threat to officer safety. Thus, whether Percich made an announcement or not is immaterial. Plaintiff also argues that it was unreasonable for defendant Dean to use a police dog to extract him from the car when he had his hands up and had surrendered. Assuming without deciding that plaintiff indeed raised his hands when directed to do so, in light of the events leading up to plaintiff's capture and as discussed above, defendant Dean was not required to accept his apparent surrender. Plaintiff also contends that Dean unreasonably used a police dog to extract him when other officers were already in the car trying to get control of him.

However, Dean stated that he decided to minimize the risk to human life by relying on the dog. This was not an unreasonable decision.

When the dog failed in its first attempt to grip plaintiff by the leg, it bit down on plaintiff's arm and then pulled him from the car. Plaintiff states that once he was out of the car the dog also bit his finger and broke it. In opposition to summary judgment, plaintiff for the first time alleges that defendant Dean directed the dog to inflict the bite on the finger. Opp. at 3 [Doc. #52]. This assertion is inconsistent with his deposition testimony that the dog lost its grip and snapped at him. Pl. Dep. at 54. Plaintiff cannot alter his deposition testimony to manufacture a factual dispute. RSBI Aerospace, Inc. v. Affiliated FM Ins. Co., 49 F.3d 399, 402 (8th Cir. 1995) (parties to summary judgment motion cannot create "sham issues of fact" to defeat summary judgment); Wilson v. Westinghouse Elec. Corp., 838 F.2d 286, 289 (8th Cir. 1988) (same).

Defendant Dean announced that he was with the Canine Unit and "gave a series of clear audible commands" to plaintiff to "exit the car slowly and show his hands or the police dog would be released to apprehend him." Percich Aff. ¶39. Plaintiff asserts that he did not hear defendant Dean make any warnings. "There exists no *per se* rule that deployment of a police canine is unreasonable unless preceded by a warning." Grady v. Becker, 907 F. Supp. 2d 975, 980 (D. Minn. 2012) (quoting Kuha v. City of Minnetonka, 365 F.3d 598, 599 (8th Cir. 2013) abrogated on other grounds by Szabla v. City of Brooklyn Park, 486 F.3d 385 (8th Cir. 2007)) (*en banc*) ("[T]here may be exceptional cases where [a canine] warning is not feasible."). "That said, the *general* rule is that absent a threat to his safety, a police officer must warn a suspect before releasing a dog upon him." Id. (emphasis

in original). Here, the evidence establishes that there was a threat to officer safety, as plaintiff had a gun within easy reach. Even if a warning was required, plaintiff testified that he knew the dog was present because he heard it barking and thus he had sufficient warning. See Mortensbak v. Butler, --- F. Supp. 3d ---, 2015 WL 787679, at *12 n.13 (D.S.D. Feb. 24, 2015) (dog's "constant barking" gave plaintiff "reasonable warning that noncompliance could result in the deployment of a police dog.").

The deployment of a police dog to apprehend plaintiff under the circumstances presented here was not unreasonable and defendant Dean is entitled to summary judgment.

\* \* \* \* \*

For the above reasons,

**IT IS HEREBY ORDERED** that the motion of defendant Eddie Boyd for summary judgment [Doc. #41] is **granted**.

**IT IS FURTHER ORDERED** that the motion of defendant Robert Dean for summary judgment [Doc. #45] is **granted**.

_____
CAROL E. JACKSON
UNITED STATES DISTRICT JUDGE

Dated this 5th day of August, 2015.